No. 38,212

F. H. Cron, *Appellee,* v. J. Earl Tanner, M. A. Tanner, C. N. Mc-
Carter, and C. C. Zimmerman as directors of the Walnut Valley
State Bank, El Dorado, Kansas, a Kansas corporation; J. Earl
Tanner as President, C. N. McCarter as Vice-President and C. C.
Zimmerman as Secretary of the Walnut Valley State Bank, El
Dorado, Kansas, a Kansas corporation, and The Walnut Valley
State Bank, El Dorado, Kansas, a Kansas corporation, *Appellants.*

(229 P. 2d 1008)

Opinion filed
April 7, 1951.

K. M. *Geddes,* and *George J. Benson,* both of El Dorado, argued the cause, and *George S. Benson,* and *Page W. Benson,* both of El Dorado, were with him on the briefs for the appellants.

*Gale Moss,* of El Dorado, argued the cause and was on the briefs for the appellee.

The opinion of the court was delivered by

WERTZ, J.: Appellee, owner of 43½% of the common capital stock of defendant bank, brought this action in mandamus against the officers and directors thereof to compel them (1) to retire $10,000 of the outstanding preferred stock in said bank; (2) to vote to pay a dividend of not less than 15% on all outstanding common stock; and (3) to compel defendant president and manager of said bank to pay to the bank $1,200 received by him as dividends on preferred stock owned by him, and $4,500 paid him as salary alleged to have been excessive in amount. This appeal is from the order of the court overruling defendant's demurrers to plaintiff's amended petition.

The general allegations of plaintiff's amended petition applicable to his three separate causes of action may be stated thusly: that he is the owner of 43½% of the oustanding capital stock of the Walnut Valley State Bank of El Dorado, Kansas; that defendant J. Earl Tanner is the duly elected president of said bank and defendants C. N. McCarter, C. C. Zimmerman and M. A. Tanner are duly elected directors; that defendant J. Earl Tanner is the owner of and controls more than 51% of the outstanding common stock of said bank and has so controlled the same since April 16, 1941; that J. Earl Tanner has been a director of the bank since its organization May 16, 1923, and has been president since April 16, 1941; that since the latter date defendant J. Earl Tanner has personally elected or caused to be elected by reason of his ownership and control of more than 51 per cent of the common stock of the bank, all the officers and a majority of each succeeding board of directors of the bank; that defendant J. Earl Tanner is and was at all times pertinent hereto in the sole and exclusive control of the affairs of the said bank, its management, policies and actions, and by reason thereof controls the passage or failure to pass any and all motions, resolutions and actions of the board of directors and stockholders of the bank in all meetings, regular or special, held by the directors or stockholders.

For his first cause of action plaintiff alleges the additional facts that on June 17, 1935, a special meeting of the stockholders of the

defendant bank was legally held at the bank; that the subject matter of said stockholders' meeting related to the issuance by said bank of $25,000 in preferred stock under the provisions of Ch. 30, Laws of Kansas, 1933 Special Session. This law authorized all banking corporations with the approval of the bank commissioner to issue preferred stock and to make such amendments to its articles of incorporation as might be necessary. Acting under the authority of this law, the stockholders of the bank, including plaintiff, voted to change the form of its capital stock by retiring pro rata among its stockholders $25,000 in common stock, which was done by reducing the par value from $100 to $50 per share, and by authorizing in place thereof $25,000 in preferred stock at the par value of $62.50 per share. The preferred stock was preferred to the extent that dividends would be paid on it before any dividends could be paid on the common stock. Pursuant to the action at the stockholders' meeting, 400 shares of stock were issued and sold to the Reconstruction Finance Corporation; as portions of the preferred stock were retired, new certificates were issued to the holders of the remaining outstanding preferred stock; the preferred stock was retired by defendant bank in accordance with the minutes and resolutions so that on October 7, 1940, 160 shares of the original issue remained unretired; that about October 7, 1940, defendant J. Earl Tanner purchased the unretired balance of preferred stock of 160 shares from the Reconstruction Finance Corporation and defendant J. Earl Tanner is now the owner and holder of the outstanding preferred stock of the par value of $10,000; that the mentioned bank has failed and neglected to retire the 160 shares of preferred stock as required by the minutes and resolutions under which it was originally issued and failure to retire the same is due solely to the fact that defendant J. Earl Tanner and the defendant officers and directors of said bank controlled by him refused to provide for said retirement; that at all times since April 16, 1941, as disclosed by the minutes and proceedings of the meetings of stockholders and directors of the bank, motions of the plaintiff to retire the 160 shares of preferred stock have been defeated and lost, due solely to the fact that defendant J. Earl Tanner refused to vote in favor thereof or refused to cause the directors and stockholders controlled by him to so vote; that by reason thereof defendant J. Earl Tanner draws interest payable by the bank on the aforementioned stock at the rate of four per cent per annum at a cost to the bank of $400

annually; that defendant bank has been in financial condition since April 16, 1941, to retire said preferred stock; the petition further set forth the financial condition of the bank each year from 1941 to 1949 inclusive; that in 1949, the bank had a surplus of $50,000 and an undivided profits account of $75,214.57. Plaintiff further alleges that the failure of defendant J. Earl Tanner individually and as a majority stockholder and director of said bank to provide for the retirement and to retire said preferred stock held by him works to the detriment of the minority stockholders of the bank and this plaintiff, and inured to the personal benefit of defendant J. Earl Tanner, and that said personal benefit and advantage to defendant J. Earl Tanner is deliberate, malicious and unconscionable and caused solely by him. Plaintiff seeks to require the defendants and each of them to take necessary steps to provide for the retirement of the $10,000 in oustanding preferred stock, and for an order enjoining the defendants and each of them from paying to J. Earl Tanner any further dividends or interest on such preferred stock.

Plaintiff for his second cause of action alleged the additional facts that since defendant J. Earl Tanner became the majority common stock holder and president of defendant bank on April 16, 1941, no dividends have been declared on the common stock of the bank; that the financial condition of the bank on December 31, 1941, shows a surplus of $15,000 and undivided profits of $11,861.07; that these amounts increased from year to year and on December 31, 1949, the surplus of the bank is shown to be $50,000 and the undivided profits $75,214.57; that many times, as indicated by the records of the bank, at the meetings of the board of directors of the bank, the plaintiff made motions and offered resolutions for declaration of dividends upon the common stock of the bank; that the motions and resolutions so offered were not passed by reason of the fact that defendant J. Earl Tanner and the directors of said bank, defendants herein, voted against said motions and resolutions; that on each occasion when plaintiff made any motion or offered such resolutions, the bank was able, by reason of accumulated earnings and undivided profits, to pay reasonable dividends upon the common stock without impairing the financial condition of the bank, and the net profits and character of the business justified payment of such dividends; that on each occasion plaintiff made such a motion or offered such a resolution, the defendant J. Earl Tanner and other directors of said bank, defendants herein, controlled by said

Tanner, did act fraudulently, arbitrarily, oppressively and in disrespect of this plaintiff, a minority stockholder, in refusing to vote for payment of a dividend on the common stock; and that said fraudulent, arbitrary and oppressive acts consisted of (*a*) payment to J. Earl Tanner of interest on the outstanding $10,000 in preferred stock when it should have been retired; (*b*) raising the salary of said J. Earl Tanner as president of the bank from $1,920 in 1941 to $6,000 in 1948; (*c*) expenditure of expense money in making trips and for payment to J. Earl Tanner of other items set forth in the petition; that by reason thereof, J. Earl Tanner is profiting and has profited personally from such actions; that there exists in defendant bank sufficient earnings and undivided profits to pay a 15% dividend on the common stock; that the mentioned acts by the board of directors constitutes a wanton violation of their duty to the minority stockholders and the plaintiff; that plaintiff by way of relief asks for a court order directing defendants to take necessary steps to pay a reasonable dividend on the common stock of the bank from the undivided profits and that said dividend be not less than 15 per cent of the par value of the common stock.

Plaintiff for his third cause of action asks for recovery of $1,200 for the years 1947 to 1949 inclusive paid to defendant J. Earl Tanner as dividends on the mentioned preferred stock; to fix the salary of defendant J. Earl Tanner as president of said bank at $4,000 per annum; and to recover the excess over such amount paid defendant Tanner in years 1947 to 1949 inclusive.

The defendants challenge the sufficiency of plaintiff's petition as to each separate cause of action. Assuming as we must, upon a demurrer of this character which challenges the sufficiency of the allegations of the petition to state a cause of action for the relief prayed for, the truth of the ultimate allegations of fact pleaded in the petition as well as all inferences which may be reasonably drawn therefrom, the court is of the opinion that plaintiff's petition is insufficient as a matter of law to state a cause of action against defendants.

Plaintiff concedes that he has no complaint as to the operation and management of the bank as between the bank and the public, except as to the plaintiff, and commends the bank management on its ability to earn money.

G. S. 1949, 9-1114, provides that the business of any bank shall be managed and controlled by its board of directors and that this

shall include the authority to provide for bonus payments in addition to ordinary compensation for its officers and employees.

It is well settled that the directors of a corporation are charged with the duty of managing its affairs and only in cases of the greatest emergency are courts warranted in interfering with the internal operation of its affairs. It has been said that the fundamental principle of a corporation is that a majority of its stockholders have the right to manage its affairs so long as they keep within their charter and no principle of law is more firmly fixed in our jurisprudence than the one which declares that courts will not interfere in matters involving merely the judgment of the majority in exercising control over corporate affairs. (*Feess v. Bank,* 84 Kan. 828, 115 Pac. 563, LRA 1915A 606; *Beard v. Achenbach Memorial Hospital Ass'n,* 170 Fed. 2d 859)

We find nothing in the record or the minutes of the stockholders' meeting amending the charter and providing for the issuance of preferred stock which requires defendant bank to retire the remaining outstanding preferred stock at any particular time. The plaintiff in his first cause of action complains only of the majority of the directors voting against his motion to retire the outstanding preferred stock. The allegations of plaintiff's petition applicable to each cause of action stating that defendant J. Earl Tanner is the owner of and controls more than 51 per cent of the outstanding common stock and is in sole and exclusive control of the affairs of defendant bank, its management policies and actions, and by such sole and exclusive control exercised by him, J. Earl Tanner has and does now control absolutely the passage of all motions, resolutions and other actions of the board of directors of the bank in all meetings regular and special, is a conclusion which does not in this court's opinion justify the inference of wrongdoing charged to defendants. While the merits or ultimate success of a claim are not considered in determining the sufficiency of a petition, conclusory statements cannot be utilized to supply material facts by inference. A good petition must contain a plain and concise statement of material facts upon which plaintiff relies. It appears from the pleadings that the majority of the directors in their judgment determined that it was not to the best interests of the bank that any portion of the surplus or undivided profits be used to retire the outstanding preferred stock. The pleadings disclose and plaintiff concedes that the management of the bank has produced a good profit, and no

unlawful or ultra vires acts are charged against any of its officers.

In the plaintiff's second cause of action the only allegation of wrongdoing alleged is that defendant Tanner and the other directors failed to vote in favor of plaintiff's motions at the directors' meetings to declare a dividend on the common stock, although sufficient funds were available in the undivided profits account, and passed a resolution increasing the salary of the defendant Tanner as president of the bank.

It is a well established rule of law that while courts have power to order payment of dividends out of undivided profits, they will not infringe upon the discretion vested in corporate officers, and in any instance are loath to act unless it clearly appears that the discretion is in bad faith abused. (*Barrows v. J. N. Fauver Co.*, 280 Mich. 553, 274 N. W. 325; *Reid v. Long Island Bond & Mortgage Guar. Co.*, 98 N. Y. S. 2d 739)

Declaration of a dividend on the stock of a corporation rests in the sound discretion of its board of directors. (*Greene County Nat. Farm Loan Ass'n v. Federal, etc.*, 57 Fed. Supp. 783; *Richards v. Pacific S. W. Discount Corp.*, 44 Cal. App. 2d 551, 112 P. 2d 698) The mere fact that a corporation has a large surplus or undivided profits account does not entitle the stockholders to a dividend as a matter of right. To what extent the net earnings should be distributed among the share holders depends largely upon the bank's need for accumulated reserve to strengthen its credit, increase its working capital, carry out contemplated projects of expansion, and to provide contingencies against future hazards. These questions, in the absence of fraud, are to be determined by the governing board of the bank. (*Jones v. Costlow*, 349 Pa. 136, 36 Atl. 2d 460; *Anderson v. Bean*, 272 Mass. 432, 172 N. E. 647, 72 A. L. R. 959)

An examination of the plaintiff's petition fails to disclose any allegation upon which fraud or bad faith could be predicated and nothing which would disclose that the actions of the majority of the board of directors were ultra vires.

Plaintiff complains that the board of directors' action increasing the salary of its president to $6,000 a year was wrongful. It is argued that he is worth no more than $4,000. However, there is no allegation in the petition that the salary as fixed was due to any arbitrary action on the part of directors of the bank. G. S. 1949, 9-1114, provides that the board of directors may fix salaries of its officers. The bank's charter contains a similar provision. Plaintiff

concedes that the president had performed his services in an efficient manner and that the operation of the bank was business-like and profitable. An intolerable position might result if the court should too lightly undertake the fixing of salaries at the suit of a dissatisfied stockholder. If the plaintiff desires to seek relief, he should allege in his petition the wrongdoing or oppression exercised by the board of directors in fixing salaries of its officers. (*Schmitt v. Eagle Roller Mill Co.,* 199 Minn. 382, 272 N. W. 277; *Jones v. Costlow,* supra.)

Summarizing the allegations of the plaintiff's petition, plaintiff seeks to have a court of equity substitute its business judgment for that of the directors of the bank. It is not the function of the court to manage a corporation nor substitute its own judgment for that of the officers thereof. It is only when the officers are guilty of willful abuse of their discretionary power or of bad faith, neglect of duty, perversion of the corporate purpose, or when fraud or breach of trust are involved, that the courts will interfere. (*Jordan v. Austin Securities Co.,* 142 Kan. 631, 651, 51 P. 2d 38; *Barrows v. J. N. Fauver Co.,* supra)

In view of what has been said, other grounds of the demurrers need not be discussed. The judgment of the lower court is reversed and remanded with directions to sustain defendants' demurrers to each count of the plaintiff's amended petition.